[Cite as *State v. Pippen*, 2020-Ohio-4297.]

**COURT OF APPEALS OF OHIO**

**EIGHTH APPELLATE DISTRICT
COUNTY OF CUYAHOGA**

STATE OF OHIO,                                    :

      Plaintiff-Appellee,            :

                                                 No. 109059

      v.                                         :

FLORZELL PIPPEN,                             :

      Defendant-Appellant.       :

JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** September 3, 2020

Criminal Appeal from the Cuyahoga County Court of Common Pleas
Case No. CR-19-638170-A

***Appearances:***

Michael C. O'Malley, Cuyahoga County Prosecuting Attorney, and Kelly N. Mason, Assistant Prosecuting Attorney, *for appellee.*

Mark A. Stanton, Cuyahoga County Public Defender, and Aaron T. Baker, Assistant Public Defender, *for appellant.*

LARRY A. JONES, SR., J.:

**{¶ 1}** Defendant-appellant Florzell Pippen ("Pippen") appeals his convictions for attempted rape and gross sexual imposition. For the reasons that follow, we affirm.

**{¶ 2}** In 2019, Pippen was charged with rape, two counts of gross sexual imposition, and kidnapping. Pursuant to a plea agreement, he pleaded guilty to an amended count of attempted rape, in violation of R.C. 2923.02 and 2907.02(A)(1)(b), and two counts of gross sexual imposition, in violation of R.C. 2907.05(A)(4). The kidnapping count was dismissed. The trial court sentenced Pippen to 11 years in prison and classified him as a Tier III sex offender.

**{¶ 3}** Pippen raises the following assignment of error:

> The trial court failed to substantially comply with Criminal Rule 11 by not informing Mr. Pippen that he was not eligible for the imposition of community control sanctions, as well as by wholly not addressing two separate denials of factual guilt during the plea colloquy by a 61-year-old diagnosed schizophrenic.

**{¶ 4}** In his single assignment of error, Pippen contends that the trial court violated Crim.R. 11(C)(2)(a) because it did not advise him before accepting his plea that he was subject to a mandatory term of imprisonment and not eligible for community control sanctions.[1]

**{¶ 5}** Crim.R. 11(C)(2)(a) provides that a trial court shall not accept a guilty plea in a felony case without first

> [d]etermining that the defendant is making the plea voluntarily, with understanding of the nature of the charges and of the maximum penalty involved, and, if applicable, that the defendant is not eligible for probation or for the imposition of community control sanctions at the sentencing hearing.

---

[1]The attempted rape conviction in this case carried with it a mandatory prison sentence pursuant to R.C. 2929.13(F)(2).

{¶ 6} "Crim.R. 11(C)(2)(a) requires a trial court to determine that the defendant has an awareness about the potential penalty before accepting a guilty plea. It does not, however, require the court to make any specific articulation as to the potential penalty." *State v. Homolak*, 8th Dist. Cuyahoga No. 107040, 2019-Ohio-869, ¶ 4 (comparing Crim.R. 11(C)(2)(a) with Crim.R. 11(C)(2)(b)-(c)), citing *State v. Davis*, 8th Dist. Cuyahoga No. 76085, 2000 Ohio App. LEXIS 4044, 12 (Sept. 7, 2000) ("Although the judge must specifically determine whether a defendant understands that [the defendant] is not eligible for probation, the rule does not require [the judge] to personally inform a defendant of this fact in every circumstance. Crim.R. 11(C)(2) distinguishes between things the judge must determine from those of which [the judge] must inform a defendant regardless of whether an independent understanding is shown.").

{¶ 7} Thus, this court has held that a court need not specifically inform a defendant that a particular conviction mandates prison or precludes a community control sanction where the record clearly indicates that the defendant so understood. *See, e.g., State v. Smith*, 8th Dist. Cuyahoga No. 83395, 2004-Ohio-1796, ¶ 11 ("The mere fact that the [trial] court did not specifically say 'You are ineligible for probation' or 'This offense requires a mandatory term of prison' will not be fatal unless the record clearly indicates that the defendant was unaware that [the defendant] would be sent to prison upon a plea of guilty and [the defendant] was prejudiced by that fact."); *State v. McLaughlin*, 8th Dist. Cuyahoga No. 83149, 2004-Ohio-2334, ¶ 19 ("[T]he trial court need not specifically inform the defendant

he [or she] is 'ineligible for probation' if the totality of the circumstances warrant the trial court in making a determination the defendant understands the offense is 'nonprobationable.'").

{¶ 8} As is relevant to this case, when a defendant claims that the trial court failed to explain a nonconstitutional right, the relevant inquiry is whether the court substantially complied with the rule. *State v. Clark,* 119 Ohio St.3d 239, 2008-Ohio-3748, 893 N.E.2d 462, ¶ 31. "Substantial compliance means that under the totality of the circumstances the defendant subjectively understands the implications of [the defendant's] plea and the rights [the defendant] is waiving." *State v. Nero,* 56 Ohio St.3d 106, 108, 564 N.E.2d 474 (1990).

{¶ 9} At the plea colloquy in this case, the state indicated that it would amend Count 1 from rape to attempted rape and nolle Count 4, kidnapping, in exchange for Pippen's guilty plea to attempted rape and two counts of gross sexual imposition. The state explained, "Count 1, your Honor, he would be sentenced to 3 to 11 years in prison, and that would be a mandatory sentence." The trial court asked defense counsel if that was his understanding and defense counsel responded, "It is, your Honor."

{¶ 10} Pippen contends that he did not understand his plea due to his mental health condition. We are not persuaded. After informing the court that he understood that Pippen was facing a mandatory sentence of 3 to 11 years in prison, defense counsel stated that Pippen told him that "as of last week * * * he was given his monthly injection of his psych [sic] medications. He's feeling very clear this

morning. He understands the proceedings, and is prepared to address the Court to the same." Pippen told the court that he was taking his medicine as prescribed.

{¶ 11} The trial judge asked Pippen if he had had the chance to speak with his lawyer regarding the plea and asked him if he understood the plea. Pippen answered affirmatively. The judge then asked Pippen, "Is this what you would like to do today?" and Pippen responded, "I'm pleading not guilty." The court explained that Pippen initially pleaded not guilty but was offered a plea by the state and again asked him if he would like to plead guilty to Counts 1, 2, and 3. Pippen responded, "I ain't rape nobody." The court asked Pippen, "Mr. Pippen, is this what you would like to do today?" Pippen responded affirmatively.

{¶ 12} The trial court reviewed the constitutional rights Pippen would be waiving by pleading guilty and confirmed Pippen's understanding of those rights. The court advised Pippen that the attempted rape count "can be punished by a mandatory prison sentence ranging from 3 to 11 years," the gross sexual imposition counts "can be punished by 9 to 36 months in prison, and a fine up to $10,000," and that he would be classified as a Tier III sex offender. The court explained that Pippen would be required to verify his address with in-person verification every 90 days for his lifetime.

{¶ 13} The court told Pippen that it could run his prison sentences concurrently or consecutively and "*when you are finished serving your prison sentence*, the State of Ohio Adult Parole Authority will have a mandatory five-year period of supervision under post release control." (Emphasis added.)

{¶ 14} After explaining the possible penalties for violating postrelease control, the judge asked Pippen if he understood all the information and that the court did not promise a specific sentence. Pippen confirmed he understood.

{¶ 15} After confirming that both defense counsel and the prosecutor were satisfied the court had complied with Crim.R. 11, the judge found that Pippen had been informed of his constitutional rights, and that he understood the nature of the charge, the effect of the plea, and the maximum penalties that could be imposed. The court further found that Pippen was making a knowing, intelligent, and voluntary plea.

{¶ 16} The court asked Pippen how he pled to attempted rape and Pippen answered, "I ain't rape nobody." The court asked again, "Mr. Pippen, how would you like to plead, guilty or not guilty?" Pippen responded, "Guilty." The court accepted his plea to one count of attempted rape and two counts of gross sexual imposition and found him guilty of the same. The court advised Pippen to have no contact with the victim and continued the case for sentencing.

{¶ 17} Pippen argues that the trial court never specifically advised him that prison was mandatory because the court said his attempted rape count "*can* be punished by a mandatory prison sentence ranging from 3 to 11 years." (Emphasis added.) We disagree.

{¶ 18} Recently, this court found that the trial court substantially complied with Crim.R. 11(C)(2)(a) although the trial court never specifically advised the defendant that prison was mandatory or that the defendant was ineligible for

community control sanctions because the record reflected that the defendant was nevertheless subjectively aware that he faced mandatory prison time. *State v. Gary*, 8th Dist. Cuyahoga No. 109074, 2020-Ohio-4069. This court explained:

> The trial court advised Gary that the offense to which he was pleading guilty was punishable by three to 11 years in prison, and when the trial court asked if it was "mandatory prison," the prosecutor responded affirmatively. Gary told the court that he understood both the offense to which he was pleading guilty and the maximum penalty, and told the judge he did not have any questions about the rape charge or the associated penalties. The court advised Gary that he would be subject to postrelease control "upon completion of your prison term," and when the court asked Gary after this advisement if he had any questions, he told the court "no." The record is abundantly clear that Gary understood he would be sentenced to prison and was not eligible for community control. Indeed, community control was never discussed as a possible sentence, and due to the nature and severity of his offense * * * Gary had no basis upon which to conclude that he would not be sentenced to prison.

*Id.* at ¶ 15.

{¶ 19} Likewise, here, the trial court substantially complied with Crim.R. 11(C)(2)(a), even though the trial court used the qualifier "can" and did not specifically state that Pippen was ineligible for community control sanctions. Community control sanctions were never discussed as a possible sentence; Pippen, who has a lengthy criminal record, was pleading guilty to attempted rape and gross sexual imposition involving a ten-year-old relative. Similar to the defendant in *Gary*, Pippen had no basis upon which to conclude that he would not be sentenced to prison. Thus, the record reflects that Pippen was subjectively aware that he would be sentenced to mandatory prison time.

{¶ 20} We also do not find error with the trial court's handling of Pippen's mental health. Pippen was assigned to the mental health docket. Pippen underwent a competency evaluation and was found to be competent to stand trial. Both parties stipulated to the competency report and its findings at a May 2019 pretrial hearing. At the plea hearing, defense counsel informed the court that Pippen was up to date on his injectable psychiatric medications and Pippen told the court he was taking his medications as prescribed. In addition, Pippen's statements during his plea that he did not rape anyone are not inconsistent to a plea to a charge of attempted rape.

{¶ 21} Based on the totality of the circumstances, we find that the trial court substantially complied with Crim.R. 11(C)(2)(a).

{¶ 22} Our review of the record in this case indicates that Pippen subjectively understood that he faced a mandatory prison sentence and was not eligible for community control sanctions. Accordingly, we find that the trial court substantially complied with Crim.R. 11(C)(2)(a) and overrule the assignment of error.

{¶ 23} Finally, we would like the trial courts to take note that as a measure to avoid this and other similar appeals, the court should state clearly on the record that the prison sentence is mandatory and the offense is nonprobationable. "While we do not require it, the trial court might consider as a better practice * * * the use of written plea agreements signed by the state and the defendant. Many other trial courts find this practice useful." *Gary*, 8th Dist. Cuyahoga No. 109074, 2020-Ohio-4069, at ¶ 18, citing *Homolak*, 8th Dist. Cuyahoga No. 107040, 2019-Ohio-869, at ¶ 15.

**{¶ 24}** Judgment affirmed.

It is ordered that appellee recover from appellant costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution.

It is ordered that a special mandate issue out of this court directing the common pleas court to carry this judgment into execution. The defendant's convictions having been affirmed, any bail pending is terminated. Case remanded to the trial court for execution of sentence.

A certified copy of this entry shall constitute the mandate pursuant to 27 of the Rules of Appellate Procedure.

_____
LARRY A. JONES, SR., JUDGE

ANITA LASTER MAYS, P.J., and
FRANK D. CELEBREEZE, JR., J., CONCUR